# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BRENNAN LANDY** and **CANDY WORKMAN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH LTD.**, a Massachusetts corporation,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Brennan Landy ("Landy") and Candy Workman ("Workman") (collectively "Plaintiffs") bring this Class Action Complaint against Defendant SunPath Ltd. ("Defendant" or "SunPath") to stop Defendant's practice of placing calls to consumers who are registered on the National Do Not Call Registry and to obtain redress for all persons similarly injured by Defendant's conduct. Plaintiffs also seek an award of statutory damages to the members of the Class, plus court costs and reasonable attorneys' fees. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1. Plaintiff Landy is a natural person over the age of eighteen (18) and is a citizen of the State of Pennsylvania. Plaintiff Landy resides in Ardmore, Pennsylvania.

2. Plaintiff Workman is a natural person over the age of eighteen (18) and is a citizen of the State of West Virginia. Plaintiff Workman resides in Fayetteville, West Virginia.

3. Defendant SunPath Ltd. is a corporation organized in and existing under the laws of the State of Massachusetts, with its principal place of business located in Braintree, Massachusetts.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., a federal statute. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

5. This Court has personal jurisdiction over SunPath because it solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant made the calls from within this District, and because a significant portion of the wrongful conduct giving rise to this case occurred in, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

7. Defendant SunPath is a company that markets and administers vehicle service contracts to consumers across the country. SunPath describes its Vehicle Service Contract ("VSC") offerings as a contract between consumers and SunPath that provides repair coverage for vehicles after the manufacturer's warranty expires.[1]

8. Unfortunately for consumers, SunPath casts its marketing net too wide. That is, in an attempt to promote its business and to generate leads for its financial products, Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes

---

[1] http://www.gosunpath.com/plans/

unsolicited autodialed and prerecorded phone calls to consumers' telephones, including cellular telephones, without prior express consent to make these calls. Indeed, while not at issue here, SunPath places these calls to telephones using an ATDS without consumers' prior written express consent in violation of the TCPA.

9. Relevant to the instant case, SunPath also places calls to telephones of consumers who have registered their phone numbers on the National Do Not Call Registry.

10. The Telephone Consumer Protection Act 47 U.S.C. § 227, et seq. ("TCPA") and its implementing regulations, 47 C.F.R. §64.1200, *et seq*. prohibit companies and persons, such as Defendant, from placing multiple, repeated calls to persons who have listed their phone numbers on the national Do Not Call registry.

11. In an effort to obtain leads for its services, SunPath made (or directed to be made on its behalf) repeated calls to the telephones of Plaintiffs and other members of the Class without first obtaining express consent to do so—in violation of the TCPA.

12. The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint—calls placed to numbers without prior express written consent to persons who listed their phone numbers on the Do Not Call list.

13. By making the unauthorized calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls as well as a loss of value realized for any monies that consumers paid to their carriers for the receipt of such calls. Furthermore, the calls interfered with and interrupted Plaintiffs' and the other Class members' use and enjoyment of their phones, including the related data, software, and hardware components. Defendant also injured the Plaintiffs and Class members by causing wear and tear on their phones, consuming battery life, and appropriating cellular minutes and data.

14. At no time did Defendant obtain prior express consent from the Plaintiffs and the Class members orally or in writing to receive calls from Defendant notwithstanding the presence of their phone numbers on the Do Not Call list.

15. Defendant knowingly made, and continues to make, telemarketing calls to numbers on the Do Not Call list without the prior express consent of the recipients. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, it also intentionally and repeatedly violated the TCPA.

16. Defendant was, and is, aware that the autodialed and prerecorded calls described herein were made to consumers like Plaintiffs who have not consented to receive them.

17. To the extent any third party made the calls, the third party acted on behalf of Defendant, at Defendant's direction and control, for Defendant's knowing benefit, and with Defendant's approval. Defendant ratified the making of any such calls.

18. To redress these injuries, Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, bring this suit under the TCPA, which prohibits unsolicited calls to telephones registered on the Do Not Call list.

19. On behalf of the Class, Plaintiffs seek an injunction requiring Defendant to cease all unauthorized calling activities to persons registered on the Do Not Call list and an award of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF LANDY

20. Plaintiff Landy is the subscriber to and customary user of the personal cellular telephone number ending in 5129.

21. Plaintiff Landy registered his phone number on the National Do Not Call Registry on or around December 15, 2004.

22. On approximately May 15, 2019, Plaintiff received a call from the phone number (610) 904-7473.

23. After answering the call, Landy was met with a prerecorded voice that instructed him to press a number button to discuss the expired warranty on his car. Landy followed the instructions and was connected to a live representative. After connecting, he was thereafter transferred to a second representative who identified himself as "Eric."

24. In an effort to identify who was calling him, Landy asked to receive an email and provided his email address. Plaintiff received an email from noreply@pomdriving.com, which included a form contract for vehicle service as an attachment. The contract was titled "SecureAdvantage Platinum," which is the name of a service contract offered by SunPath on its website.[2]

25. Further, the proposed (but never accepted) contract named SunPath, Ltd. as the contract administrator and prominently featured the phone number (888) 990-7786—the same number appears on SunPath's site for general contact.[3] (*See* SecureAdvantage Contract, attached hereto as Exhibit A.)

26. Two days later, Landy received another call on May 17, 2019, again from (610) 904-7473. When he answered the phone, Landy was met with dead air before the call disconnected.

27. On August 9, 2019, Landy received a call from (610) 389-8830. When he answered the call, he was met with dead air before he heard a click and was connected to a representative. The representative claimed to be calling from SunPath.

28. On August 19, 2019, Landy received a call from (610) 389-2570. When he answered the call, he was met with dead air before he heard a click and was connected to a representative. The representative claimed to be calling from SunPath.

29. Landy asked to receive an email and provided his email address. Plaintiff received another email from noreply@pomdriving.com, which included a second form contract for vehicle service as an attachment. This proposed contract was titled "Mileage Plus," which is the name of another service contract offered by SunPath on its website.[4] Just like the first proposed agreement, this proposed (but never accepted) contract named SunPath, Ltd. as the contract

---

[2] *See* www.gosunpath.com/plans/secureadvantage/.

[3] www.gosunpath.com/contact.asp.

[4] *See* www.gosunpath.com/plans/mileageplus.asp.

administrator and prominently featured SunPath's (888) 990-7786 phone number. (*See* Mileage Plus Contract, attached hereto as Exhibit B.)

30. Two days later, on August 21, 2019, Landy received a call from (610) 615-0121. When he answered the call, he was met with dead air before he heard a click and was connected to a representative. He spoke with several representatives, at least one of whom mentioned that they were calling from SunPath.

31. On September 10, 2019, Landy received a call from (610) 279-3838. When he answered the call, he was met with a prerecorded voice that instructed him to press a number button to discuss the expired warranty on his car. Landy followed the instructions and was connected to a live representative, who mentioned that they were calling from SunPath.

32. Plaintiff Landy does not have a relationship with Defendant of any kind. He has never provided his telephone number directly to Defendant and has never requested that Defendant place any calls to him. Plaintiff Landy has never provided any form of prior express written or oral consent to receive calls from or on behalf of Defendant despite listing his number on the National Do Not Call Registry. He has no business or other relationship with the Defendant.

## FACTS SPECIFIC TO PLAINTIFF WORKMAN

33. Plaintiff Workman is the subscriber to and customary user of the personal cellular telephone number ending in 6987.

34. Plaintiff Workman registered her cellular phone number on the National Do Not Call Registry on or around April 10, 2009.

35. On or about March 12, 2019, Plaintiff received a call from the phone number (219) 732-3276.

36. When she answered the phone, Workman heard a prerecorded voice claiming that her car's warranty was about to expire and that this was her "last chance" to get an extended warranty. The message instructed Workman to press a number button to connect with a representative, which she did.

37. Workman was first connected to a representative who identified themselves as from the "National Service Dealer." Workman was thereafter transferred to a representative who gave her name as "Latasha," and then to a representative named "Lashawna Smith." Lashawna stated that she was with "SunPath Elements."

38. While Workman was on this call, she received another call from the same phone number, (219) 732-3276.

39. Approximately one month later, Plaintiff Workman received a call on or around April 12, 2019, from (304) 898-4901.

40. When she answered the phone, Workman was greeted with another prerecorded voice message relating to her car's warranty with a prompt to press a number button. She did so, and her call was connected to a representative named "Jason." Jason told Workman that he was calling about her extended home warranty.

41. Workman was then transferred to a second representative who identified herself as "Rachel Drake," calling from Sun Path extended car warranty. "Rachel" said she worked for both SunPath and "National Dealer Services." Workman asked for a phone number at which she could call Rachel back, and Rachel refused to provide one. Instead, Rachel gave an email address linked to "sunpathltd.com."

42. Several weeks later, on or around April 23, 2019, Workman received a call from (304) 303-5899. When she answered the call, she said "hello" several times before she heard a click and was connected to a representative.

43. After connecting, Workman was transferred to a second representative named "Jason Collins." Jason provided Workman with a phone number to call him (1-800-609-6192, extension 2143), and he referred Workman to the website GoSunPath.com.

44. A few days later, on or around April 26, 2019, Workman received another call from (304) 303-5899. When she answered the call, she said "hello" several times before she heard a click and was connected to a representative.

45. After connecting, Workman spoke with a representative and was transferred among many other representatives.

46. In an effort to identify who was calling her, Workman asked to receive an email and provided her email address. Plaintiff received an email from sales@automotiveservicescenter.com, which included a form contract for vehicle service as an attachment. The proposed (but never accepted) contract was titled "Horizon Diamond," the name of a service contract offered by SunPath. Further, the proposed contract named SunPath, Ltd. as the contract administrator and prominently featured SunPath's (888) 990-7786 phone number. (*See* Horizon Diamond Contract, attached hereto as Exhibit C.)

47. Workman thereafter received two additional calls on or around April 26, 2019 from (855) 279-3988. These calls featured live representatives seeking payment. Workman asked them not to call again.

48. Plaintiff Workman does not have a relationship with Defendant, has never provided her telephone number directly to Defendant, and has never requested that Defendant place calls of any kind to her or offer her its services. She never consented at all. Plaintiff Workman has never provided any form of prior express written or oral consent to Defendant to place prerecorded and/or autodialed calls to her, or to place calls to her despite listing her number on the National Do Not Call Registry, and she has no business relationship with Defendant.

## CLASS ACTION ALLEGATIONS

49. Plaintiffs Landy and Workman bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and a Class defined as follows:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant, or a third person acting on behalf of Defendant, called more than one time on his/her telephone; (2) within any 12-month period; (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling SunPath's products

and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiffs.

50. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiffs anticipate the need to amend the class definition following appropriate discovery.

51. **Numerosity:** The exact number of members within each Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed pre-recorded calls to thousands of consumers who fall into the defined Class. Members of the Class can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

52. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

53. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class, and they have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

54. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant systematically made unsolicited telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(c) Whether any third party made the calls and, if so, whether Defendant is liable for such calls;

(d) Whether the Plaintiffs and the other members of the Class are entitled to statutory damages; and

(e) Whether Defendant acted willfully so as to require an award of treble damages.

55. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227,** *et seq.*
**(On behalf of Plaintiffs and the Do Not Call Registry Class)**

56. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

57. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy and their right to avoid receiving telephone solicitation to which they object.

58. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

59. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[5]

60. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive

---

[5] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

61.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers like the Plaintiffs and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

62.     Defendant made multiple unsolicited telephone calls to Plaintiffs Landy and Workman and the other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiffs Landy and Workman and other members of the Class never provided any form of consent to receive telephone calls from Defendant, and Defendant does not have a current record of consent to place telemarketing calls to them.

63.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiffs and the other members of the Class suffered actual harm and, under 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

64.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Landy and Workman, on behalf of themselves and the Class, pray for the following relief:

A.     An order certifying the Do Not Call Class as defined above, appointing Plaintiffs Brennan Landy and Candy Workman as the representatives of the Class and appointing their counsel as Class Counsel;

  B. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

  C. An order declaring that Defendant's actions, as set out above, violate the TCPA;

  D. An award of pre- and post-judgment interest;

  E. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

  F. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: December 20, 2019  **BRENNAN LANDY** and **CANDY WORKMAN**, individually and on behalf of all others similarly situated,

By: /s/ J. Steven Foley
  One of Plaintiffs' Attorneys

J. Steven Foley
Law Office of J. Steven Foley
100 Pleasant Street #100
Worcester, Massachusetts 01609
Telephone: 508-754-1042
Facsimile: 508-739-4051

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Stephen A. Klein*
sklein@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300

Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Class

*Pro Hac Vice Application to be filed*